[No. 83451-2.   En Banc.]
Argued October 19, 2010.     Decided June 30, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. CLIFF ALAN JONES, *Petitioner*.

*Roger A. Hunko*; and *Dana M. Lind* (of *Nielsen, Broman & Koch PLLC*), for petitioner.

*Russell D. Hauge, Prosecuting Attorney*, and *Jeremy A. Morris* and *Kevin D. Hull, Deputies*, for respondent.

¶1 Fairhurst, J. — Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, Cliff Alan Jones challenges the trial court's denial of credit toward his sentence of community custody for time he spent incarcerated in excess of his amended sentence of incarceration. In affirming the trial court's decision, Division Two of the Court of Appeals expressly declined to follow Division Three's hold-

ing in *In re Personal Restraint of Knippling*, 144 Wn. App. 639, 183 P.3d 365 (2008) (Community custody begins at completion of the sentence of confinement; therefore, the offender is entitled to credit toward a sentence of community custody for time spent incarcerated in excess of the sentence of incarceration.). We affirm the decision of Division Two, deny Jones credit toward his sentence of community custody, and disavow Division Three's holding in *Knippling*.

## I. FACTS

¶2 Jones pleaded guilty to first degree child molestation committed between November 1998 and November 1999. The trial court sentenced him to an exceptional sentence of 130 months of incarceration and 36 months of community custody. The Court of Appeals affirmed this sentence. The Court of Appeals also dismissed Jones' personal restraint petition challenging his exceptional sentence. Jones subsequently filed another personal restraint petition, this time arguing that the trial court erred when it calculated his offender score by considering his prior "washed-out" juvenile offenses when the law at the time he committed his offenses precluded the trial court from considering them. The State conceded the error, and on January 9, 2007, the Court of Appeals granted Jones' petition and remanded for resentencing.

¶3 The trial court amended Jones' original judgment and sentence to reflect an offender score of zero, and Jones was resentenced to 51 months of incarceration and 36 months of community custody. By that time, Jones had already served 81 months of incarceration. The trial court credited Jones with time served toward his 51 month sentence of incarceration and ordered his release. However, the trial court did not credit the excess 30 months of incarceration time toward his 36 months of community custody.

¶4 Jones filed a motion for relief from judgment, arguing that his actual incarceration of 81 months, when added to his

sentence of community custody, exceeded the statutory maximum penalty for the offense. In a second memorandum of authorities, Jones raised the additional argument that he should receive credit for time spent incarcerated in excess of his sentence (30 months) toward his 36 month sentence of community custody. The State argued that Jones' sentence did not exceed the statutory maximum because under RCW 9A.44.083 and former RCW 9A.20.021 (1982), the statutory maximum sentence for Jones' offense, a class A felony, was life in prison. The State also argued that the trial court did not have authority to credit his sentence of community custody for excess time spent incarcerated.

¶5 On November 2, 2007, the trial court issued findings of fact and conclusions of law denying Jones' motion for relief from judgment. The trial court held that Jones' judgment and sentence did not exceed the statutory maximum of life in prison for the offense. Additionally, the trial court held that it had no statutory authority to credit Jones' sentence of community custody for time served in excess of 51 months because, under the plain language of former RCW 9.94A.170(3) (1999),[1] "[a]ny period of community custody, community placement, or community supervision shall be tolled during any period of time the offender is in confinement *for any reason.*" Clerk's Papers at 45 (emphasis added). Jones timely appealed the court's decision to deny him credit toward his sentence of community custody for excess time spent incarcerated.

¶6 The Court of Appeals affirmed the trial court's denial of credit toward community custody. *State v. Jones,* 151 Wn. App. 186, 188, 210 P.3d 1068 (2009). Noting that the State conceded that Jones was incarcerated beyond his standard range sentence of 51 months, the Court of Appeals identi-

---

[1] The record cites the recodified statutory provision in effect at the time of the trial court's decision, former RCW 9.94A.625(3) (2001). Former RCW 9.94A.625(3) was recodified in 2008 as RCW 9.94A.171 without substantive change material to this case. This opinion will hereinafter refer to former RCW 9.94A.120(17) (1999), and all other applicable SRA provisions in effect at the time Jones committed his offense. *See* RCW 9.94A.345.

fied the central issue as "whether Jones's community custody term began at the completion of his 51-month incarceration term or whether it was tolled until he was actually released into the community." *Id.* at 190. After analyzing the plain and unambiguous language of former RCW 9.94A.120(10)(a) (1999) (SRA provision governing when community custody begins), former RCW 9.94A.170(3) (SRA provision governing the tolling of community custody), and former RCW 9.94A.030(4) (1999) (SRA provision defining community custody), the court affirmed the trial court's decision denying credit toward a sentence of community custody for excess time spent incarcerated. *Jones,* 151 Wn. App. at 194. As the court explained:

> Allowing Jones to begin his community custody term before his release into the community would contravene both the plain language of former RCW 9.94A.030(4), which defines "community custody" as "that portion of an inmate's sentence of confinement ... *served in the community,*" and the "substantial public policy goal" of "improving the supervision of convicted sex offenders in the community upon release from incarceration." (Emphasis added); *see* LAWS OF 1996, ch. 275, § 1.

*Id.* at 193 (alteration in original). Lastly, the Court of Appeals held, "[T]he sentencing court did not violate Jones's right to be free from double jeopardy." *Id.* at 195.[2]

¶7 As part of Division Two's holding on the issue of statutory authority to grant credit toward a sentence of community custody for excess time spent incarcerated, Division Two respectfully disagreed with Division Three. *Id.* at 191-95. In *Knippling,* Division Three held that excess time spent incarcerated because of a resentencing must be

---

[2] Jones argued to the Court of Appeals that failing to credit excess time spent incarcerated toward a sentence of community custody violated double jeopardy. The Court of Appeals held that denying credit toward community custody did not violate double jeopardy. Subsequently, the issue of double jeopardy was never expressly discussed in the petition for review, nor was any of the applicable authority ever cited. Jones failed to submit a supplemental brief to this court, and the State's supplemental brief does not address the double jeopardy issue. This issue appears to have been abandoned, and we decline to address it at this time.

credited against an offender's sentence of community custody. 144 Wn. App. at 643.

¶8 Jones timely appealed his sentence to this court. We granted review to resolve the issue of whether Jones' 30 months of excess incarceration must be credited against his 36 month sentence of community custody, and to resolve the conflict between Division Two and Division Three. *State v. Jones*, 167 Wn.2d 1017, 224 P.3d 773 (2010).

## II. ANALYSIS

■■ ¶9 We affirm the Court of Appeals and hold that the trial court did not err when it declined to credit Jones' sentence of community custody for excess time he spent incarcerated. This case requires the statutory interpretation of multiple SRA provisions. Interpretation of the SRA is a question of law that we review de novo. *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001). When interpreting a statute, "the court's objective is to determine the legislature's intent." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). If the meaning of a statute is plain on its face, we " 'give effect to that plain meaning.' " *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). To determine the plain meaning of a statute, we look to the text, as well as "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.* An undefined term is "given its plain and ordinary meaning unless a contrary legislative intent is indicated." *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998). If after this inquiry the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we "may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007).

■ ¶10 Two statutes are implicated, former RCW 9.94A-.120(10)(a) and former RCW 9.94A.120(17). Former RCW

9.94A.120(10)(a) is the statute under which the trial court sentenced Jones to 36 months of community custody. Former RCW 9.94A.120(10)(a) provides:

> When a court sentences a person to the custody of the department of corrections for an offense categorized as a sex offense committed on or after June 6, 1996, and before July 1, 2000, the court shall, in addition to other terms of the sentence, sentence the offender to community custody for three years or up to the period of earned release awarded pursuant to RCW 9.94A-.150(1) and (2), whichever is longer. The community custody shall begin either upon completion of the term of confinement or at such time as the offender is transferred to community custody in lieu of earned release in accordance with RCW 9.94A.150(1) and (2).

Nothing in this provision authorizes the court to credit presentence or postsentence confinement toward the mandatory sentence of community custody.

¶11 Jones argues that a different statute, former RCW 9.94A.120(17), requires the trial court to credit a sentence of community custody for excess time spent incarcerated. Former RCW 9.94A.120(17) states, "The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced." That statute provides for a grant of credit for confinement time served, but it does not explicitly provide whether it is limited toward a sentence of confinement or whether that credit can also be applied to a sentence of community custody. Having found no express statutory authority crediting a sentence of community custody for excess time spent incarcerated, we analyze the statutory scheme of which the above provisions are a part.

¶12 Statutes must be read together to achieve a harmonious total statutory scheme maintaining the integrity of the respective statutes. *State v. O'Neill*, 103 Wn.2d 853, 862, 700 P.2d 711 (1985). Allowing excess time spent incarcerated to satisfy a sentence of community custody

would contravene the definition of " '[c]ommunity custody' " in former RCW 9.94A.030(4) and the plain and unambiguous language of the community custody tolling provisions of former RCW 9.94A.170(3). Former RCW 9.94A.030(4) defines " '[c]ommunity custody' " as

> that portion of an offender's sentence of confinement in lieu of earned release time or imposed pursuant to RCW 9.94A.120 (5), (6), (7), (8), (10), or (11), or RCW 9.94A.383, served *in the community* subject to controls placed on the offender's movement and activities by the department of corrections.

(Emphasis added.) Having been incarcerated during the excess time served on his sentence of incarceration, Jones necessarily was not *in the community* and thus cannot be deemed to have served his sentence of community custody. Accordingly, excess time Jones spent incarcerated does not meet the definition of "community custody," and granting credit toward his sentence of community custody would contravene the plain and unambiguous language of the statute defining "community custody."

¶13 Former RCW 9.94A.170(3), the community custody tolling statute, provides in pertinent part:

> ny period of community custody shall be tolled during any period of time the offender is in confinement *for any reason.* However, if an offender is detained pursuant to [former] RCW 9.94A.207 [(1999)][3] or [former] 9.94A.195 [(1984)][4] and is later found not to have violated a condition or requirement of community custody, time spent in confinement due to such detention shall not toll the period of community custody.

---

[3] Former RCW 9.94A.207(1) governs the secretary's authority to issue a warrant for the arrest and confinement of any "offender who violates a condition of community placement or community custody." This exception to the community custody tolling statute is not implicated in this case because Jones was not confined for a violation of the conditions of his community custody.

[4] Former RCW 9.94A.195 authorizes a community corrections officer to conduct a warrantless search or arrest of any offender if the officer reasonably believes the offender has violated a condition of their sentence. This exception to the community custody tolling statute is not implicated in this case because Jones was not confined because of a violation of the conditions of his community custody.

(Emphasis added.) Jones argues that under former RCW 9.94A.170(3), his sentence of community custody was not tolled during the period of time that he was in confinement because former RCW 9.94A.170(3) applies only to an offender who has subsequently been incarcerated for a crime different from the one for which the sentence of community custody was originally imposed. Former RCW 9.94A.170(3) tolls a period of community custody when the offender is "in confinement for any reason."

¶14 The SRA defines " '[c]onfinement' " as "total or partial confinement as defined in this section." Former RCW 9.94A.030(9). " 'Total confinement' " is defined as "confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to RCW 72.64.050 and 72.64.060." Former RCW 9.94A.030(38).[5] Being incarcerated for 24 hours a day under the authority of the State, Jones was in total confinement and thus was in confinement for the purposes of former RCW 9.94A.170(3).

¶15 The reason he was confined for an excess of 30 months was because his initial sentence was later amended. This falls within "any reason." *Id.* Former RCW 9.94A.170(3) is broadly written and subject to the two exceptions not applicable here, and tolls a sentence of community custody when the offender is in confinement "for any reason." Therefore, Jones' confinement in excess of his sentence tolled the running of his sentence of community custody, and to grant credit toward that community

---

[5] " 'Partial confinement' " is defined as

confinement for no more than one year in a facility or institution operated or utilized under contract by the state or any other unit of government, or, if home detention or work crew has been ordered by the court, in an approved residence, for a substantial portion of each day with the balance of the day spent in the community. Partial confinement includes work release, home detention, work crew, and a combination of work crew and home detention as defined in this section.

Former RCW 9.94A.030(28).

custody would contravene the plain and unambiguous meaning of former RCW 9.94A.170(3).[6]

¶16  Division Two correctly noted that the public policy of this State supports the conclusion that incarceration, even if in excess of the offender's sentence, cannot satisfy a sentence of community custody. *Jones*, 151 Wn. App. at 193. Requiring offenders to serve a sentence of community custody in the community serves several purposes of the SRA, including, "[p]rotect[ing] the public," "[o]ffer[ing] the offender an opportunity to improve him or herself," and "[r]educ[ing] the risk of reoffending by offenders in the community." Former RCW 9.94A.010(4), (5), (7) (1999). Requiring a sex offender to serve a sentence of community custody in the community through the application of the tolling statute helps the offender to improve him- or herself by providing both the time and resources necessary to assist with reintegration into society, while protecting the public by maintaining some control over the offender through the community custody requirements imposed by the Department of Corrections. *Id.* The legislature has recognized that community custody plays a vital role in a sex offender's reintegration into the community.

> The legislature finds that improving the supervision of convicted sex offenders in the community upon release from incarceration is a substantial public policy goal, in that effective supervision accomplishes many purposes including protecting the community, supporting crime victims, assisting offenders to change, and providing important information to decision makers.

LAWS OF 1996, ch. 275, § 1.

---

[6] Jones cites to *State v. Cameron*, 71 Wn. App. 653, 861 P.2d 1069 (1993), for the proposition that former RCW 9.94A.170(3) applies only under circumstances where the offender is incarcerated for a *different crime* during the time he is scheduled to serve a preexisting community custody sentence. In *Cameron*, the Court of Appeals held that an offender's community custody sentence was tolled when the offender, having subsequently been sentenced for a *different crime*, remained incarcerated at the conclusion of his original sentence of incarceration. 71 Wn. App. at 657. The Court of Appeals' application of former RCW 9.94A.170(3), while correct under the circumstances present in *Cameron*, did not limit the application of former RCW 9.94A.170(3) to *only* those circumstances, nor could it have.

¶17 Any limitation on the plain language of the tolling provision allowing Jones credit for excess time spent incarcerated, and in essence beginning his sentence of community custody while incarcerated, would contravene the "substantial public policy goal" of "improving the supervision of convicted sex offenders in the community upon release from incarceration." *Id.* Requiring Jones to serve all of his sentence of community custody is consistent with the legislatively established public policy of this State.[7]

¶18 Our holding, although affirming the decision of Division Two, contradicts *Knippling*, an earlier case decided by Division Three. Like this case, *Knippling* involved an offender, Jordan Knippling, who after having been incarcerated for 41 months on two counts of second degree assault and one count of first degree animal cruelty, had his sentence reduced at a resentencing hearing to 17 months. 144 Wn. App. at 641. Knippling argued that he should have been given credit against his sentence of community custody for the 24 months of his incarceration in excess of his new sentence. *Id.* Division Three, in a split decision, held

---

[7] We acknowledge that our decision results in Jones' receiving no credit for 30 months of incarceration served under a void sentence; however, we decline to exercise our equitable powers to grant Jones credit toward his sentence of community custody for that time. In *State v. Donaghe*, 172 Wn.2d 253, 256 P.3d 1171 (2011), a case originally consolidated with this case but deconsolidated after oral argument, petitioner argued that this court *should* exercise such equitable powers, citing *In re Personal Restraint of Roach*, 150 Wn.2d 29, 74 P.3d 134 (2003). In *Roach*, the Department of Corrections erroneously released an inmate 18 months early. *Id.* at 31. This court adopted the equitable doctrine granting the offender day-for-day credit toward his sentence for time spent at *liberty* provided that he did not contribute to his erroneous release and, while at liberty, he did not abscond any remaining legal obligations and had no criminal convictions. *Id.* at 37. This court justified its adoption of this equitable doctrine, in part, because there was not a contrary statute on point. *Id.* at 36-37. In this case, both former RCW 9.94A.030(4) and former RCW 9.94A.170(3) would be contradicted by granting Jones credit toward his community custody. Therefore, we decline to extend the holding in *Roach* and do not exercise our equitable powers to contravene the statutory scheme and public policy of this State.

that "under [former RCW 9.94A.120(10)(a)],[8] community custody begins at the completion of the term of confinement, and Mr. Knippling completed his term of confinement 24 months before he was actually released." *Id.* Therefore, Division Three held that his 24 months of excess incarceration should be credited against his sentence of community custody. *Id.* at 643.

¶19 The *Knippling* majority sought consistency in the statutory scheme by limiting the application of former RCW 9.94A.170(3):

> Our interpretation of [former RCW 9.94A.120(10)(a)] is consistent with [former RCW 9.94A.170(3)]. The latter statute deals with tolling of the term of community custody *after* the term of community custody has started. It provides that the community custody term does not run during time in confinement for new crimes or for community custody violations. In contrast, [former RCW 9.94A.120(10)(a)] addresses the point in time at which the term of community custody begins. And, the statute is clear that the term of community custody begins when the offender completes his confinement time.

*Knippling*, 144 Wn. App. at 642-43. However, Division Three's interpretation ignores the plain language of former RCW 9.94A.170(3). Former RCW 9.94A.170(3) contains no language limiting its application to confinement for "new crimes." The provision states that any period of community custody shall toll during any period of time the offender is in confinement "for any reason." *Id.* While former RCW 9.94A.120(10)(a) set Jones' sentence of community custody to begin after the completion of the incarceration term (51 months) of his new sentence, his continued confinement for the next 30 months tolled the running of community

---

[8] *Knippling* refers to former RCW 9.94A.715(1) (2008), which the legislature did not enact until 2000. Laws of 2000, ch. 28, § 25. Thus, the statute would not govern Jones' case. However, the pertinent language regarding when community custody begins is almost identical to former RCW 9.94A.120(10)(a). For the sake of consistency this opinion will continue to refer to the statutes in effect at the time of Jones' offense, as the applicable SRA provisions are without substantial change material to this case or *Knippling*.

custody under former RCW 9.94A.170(3). Therefore, the trial court correctly refused to grant Jones credit toward his sentence of community custody for the excess time he spent incarcerated. This interpretation is consistent with the statutory definition of "community custody" requiring it to be served in the community, and brings former RCW 9.94A-.120(10)(a) and former RCW 9.94A.170(3) into harmony. To the extent it holds differently, *Knippling* is disavowed.

## III. CONCLUSION

¶20 We affirm the Court of Appeals. We disavow *Knippling* and hold that the trial court correctly denied Jones credit toward his sentence of community custody for excess time spent incarcerated.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, OWENS, and J.M. JOHNSON, JJ., concur.

¶21 STEPHENS, J. (dissenting) — This is now the second time I have faced the issue before the court, the first being in *In re Personal Restraint of Knippling*, 144 Wn. App. 639, 183 P.3d 365 (2008). Having had the benefit of a second look, I am still convinced that an offender who remains in prison beyond the lawful period of confinement because of a sentencing error must receive credit toward a term of community custody. Because the majority would deny Cliff Alan Jones credit toward his term of community custody for the 30 months he was wrongly confined, I respectfully dissent.

¶22 As an initial matter, it is important to distinguish the question of when Jones's term of community custody began from the question of whether it was tolled. The governing statute makes clear Jones's community custody term began when he completed his 51-month term of incarceration. Former RCW 9.94A.120(10)(a) (1999) states

that "community custody shall begin . . . upon *completion* of the term of confinement." (Emphasis added.) The statute specifies "completion" of confinement as opposed to "release" from confinement. "The ordinary meaning of 'completion' is different from the ordinary meaning of 'release' because an offender can complete a term of confinement without being released." *Knippling*, 144 Wn. App. at 642 n.3. Thus, even though Jones spent an additional 30 months in prison, his term of community custody began when he completed his 51-month term of confinement.[9]

¶23 The majority reasons that Jones cannot be deemed to have served a period of community custody because he was not "in the community." Former RCW 9.94A.030(4) (1999). Contrary to the majority's view, an offender may receive credit toward a term of community custody even if the offender is not "in the community." For example, "if an offender is detained pursuant to [former] RCW 9.94A.207 [(1999)] or [former] 9.94A.195 [(1984)] and is later found not to have violated a condition or requirement of community custody, time spent in confinement due to such detention shall not toll the period of community custody." Former RCW 9.94A.170(3) (1999). In other words, the time an offender spends "in confinement" on suspicion of violating a condition of release counts toward the offender's term of community custody. The offender is not "in the community," but the statute nonetheless considers the offender to have served community custody.[10]

---

[9] The majority seems to acknowledge this point. *See* majority at 248 (noting, "former RCW 9.94A.120(10)(a) set Jones' sentence of community custody to begin after the completion of the incarceration term (51 months) of his new sentence"). On the other hand, it rejects allowing Jones credit for his excess incarceration as "in essence beginning his sentence of community custody while incarcerated." Majority at 247.

[10] For the same reason, the majority's reliance on public policy can go only so far. Despite the compelling rationale underlying community custody and reintegration of sex offenders into the community, the legislature allows offenders in some situations to serve their terms of community custody during periods when they are in confinement. Former RCW 9.94A.170(3).

¶24 Moreover, the majority's view that Jones must be "in the community" before he can serve community custody conflicts with its conclusion that Jones's term of community custody was tolled during the excess period of his confinement. A term of community custody must begin before it can be tolled. By taking the position that Jones's term of community custody was tolled, the majority necessarily accepts the premise that his term of community custody began while he was confined. This is true regardless of whether he was "in the community."

¶25 Because Jones's community custody began upon completion of his 51-month term of confinement, the only relevant question is whether the term of community custody was tolled. It was not. Jones spent the extra 30 months in prison because of a mistake in calculating his offender score.[11] The tolling statute does not speak to this situation; it contemplates tolling a term of community custody because of a community custody violation, a new crime, or the like. The phrase "confinement for any reason" must be read in the context of the anticipated situations, i.e., when there is an actual reason for the continued confinement. *See* former RCW 9.94A.170(3) (tolling proper where offender confined for proven violation of condition of community custody); *Knippling*, 144 Wn. App. at 642 (tolling proper where offender confined for new crime); *State v. Cameron*, 71 Wn. App. 653, 657, 861 P.2d 1069 (1993) (tolling proper where offender confined on concurrent sentence for different crime). While not exclusive, these examples illustrate the general class of reasons covered by the tolling statute. Excess confinement because of a mistake is markedly different and does not fall within the statute's reach.

¶26 We are thus left with one statute that plainly defines when Jones's community custody term began—

---

[11] The majority says that "[t]he reason [Jones] was confined for an excess of 30 months was because his initial sentence was later amended." Majority at 245. In my view, it is more accurate to attribute the cause of the excess confinement to the sentencing mistake, not the later-amended sentence.

upon completion of his 51-month term of confinement—and a tolling statute that does not provide for tolling based upon a sentencing mistake. We should not expand the tolling statute beyond its intended reach. Nor does it matter that Jones was not "in the community" due to the sentencing mistake, as the statutory scheme allows offenders to serve community custody while they are confined. Jones should receive credit toward his term of community custody for the 30 months he spent in prison in excess of his lawful sentence.

¶27 For these reasons, I respectfully dissent.

ALEXANDER, J., and SANDERS, J. PRO TEM., concur with STEPHENS, J.